# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARKIS JEAN-RENE, | : | CASE NO. 3:25-cv-643 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| RIVERA, et al., | : | JANUARY 28, 2026 |
| Defendants. | : | |

## <u>INITIAL REVIEW ORDER</u>

<u>Pro se</u> plaintiff Markis Jean-Rene ("Mr. Jean-Rene"), a sentenced inmate currently incarcerated at Corrigan-Radgowski Correctional Center ("Corrigan"),[1] filed this civil rights action under section 1983 of Title 42 of the U.S. Code against prison officials at Hartford Correctional Center ("Hartford").[2]  <u>See</u> Compl. (Doc. No. 1).  Mr. Jean-Rene asserts these prison officials violated his rights under state and federal law. <u>See</u> <u>id</u>. at Part E.

Mr. Jean-Rene asserts a claim of excessive force in violation of the Fourteenth Amendment.  Compl. at Part E.  Implicit in the Complaint are allegations that raise the inference of other claims, which the court examines in its liberal construction of the Complaint:  (i) deliberate indifference to serious medical needs in violation of the Fourteenth Amendment and (ii) a right to bodily privacy claim in violation of the Fourth

---

[1] Information on the Department of Correction ("DOC") website shows that Mr. Jean-Rene was sentenced on September 6, 2024, to six years' imprisonment and is currently housed at Corrigan.  <u>See</u> https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=409082 (last visited December 30, 2025).  The court takes judicial notice of this public record.  <u>See</u>, <u>e.g.</u>, <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006); <u>Kelley v. Quiros</u>, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).  Thus, Mr. Jean-Rene was unsentenced on July 18, 2023, the date the alleged constitutional violations occurred.  <u>See</u> Compl., at ¶ 1.

[2] Mr. Jean-Rivera lists as defendants Captain Rivera, Lieutenant Hartley, Warden Long, C.O. Stewart, C.O. Alicea, C.O. Young, Nurse Fern Browne, and Nick Rodriguez.  <u>See</u> Compl. at 1.

Amendment.

I.    **FACTUAL BACKGROUND**

Mr. Jean-Rene is now housed at Corrigan, see supra note 1, but he was previously housed at Hartford on July 18, 2023.  See Compl. at ¶ 1; Part C.[3]  On this date, Mr. Jean-Rene awoke to "severe pain" in his stomach.  Compl. at ¶ 1.  Prison staff escorted Mr. Jean-Rene to the medical unit, where a doctor diagnosed him as having a hernia in his stomach that would require surgery.  Id.  Despite this, Nurse Browne declined to place Mr. Jean-Rene on a list for surgery and denied Mr. Jean-Rene's request for a bottom bunk pass.  Id. at ¶ 2.  When Mr. Jean-Rene explained that his injury meant that he would "not be able to climb on [his] bunk," Nurse Browne replied that she "did not care."  Id.  Mr. Jean-Rene returned to his dorm in severe pain.  Id. at ¶ 3.  On the way back to his dorm, Mr. Jean-Rene stopped Captain Rivera in the hallway and "explained [his] situation" to Captain Rivera.  Id.  Captain Rivera told Mr. Jean-Rene that he "would look into it and took [Mr. Jean-Rene's] name down."  Id.  After Mr. Jean-Rene arrived at his dorm, Lt. Hartley entered and ordered the inmates to their bunks for a "shakedown" because Lt. Hartley smelled marijuana.  Id. at ¶¶ 3–4.

Mr. Jean-Rene explained to Lt. Hartley that he could not climb to his top bunk because of his hernia.  Id. at ¶ 4.  Mr. Hartley told Mr. Jean-Rene that he did not care that Mr. Jean-Rene could not climb the bunk and ordered him to climb the bunk.  Id.  Mr. Jean-Rene insisted that he could not do so.  Id.  Lt. Hartley then summoned other officers, who searched and handcuffed Mr. Jean-Rene.  Id.  Lt. Hartley instructed C.O.

---

[3] Though Mr. Jean-Rene does not allege explicitly his confinement at Hartford, the court interprets the alleged events as having taken place at Hartford given that the allegations concern only defendants employed at Hartford.

Young and C.O. Alicea to "use a reverse escort" to take Mr. Jean-Rene to the restrictive housing unit ("RHU"). Id. at ¶¶ 5–6. C.O. Young and C.O. Alicea proceeded to carry Mr. Jean-Rene by his shoulders, "hurting" Mr. Jean-Rene in the process. Id. ¶ 5. After C.O. Young and C.O. Alicea saw that Mr. Jean-Rene was unable to walk, they retrieved a wheelchair and transported Mr. Jean-Rene to the RHU in the wheelchair. Id. at ¶ 6.

Once at the RHU, Lt. Hartley told another correctional officer, C.O. Stewart, to conduct a "controlled cavity search" because Mr. Jean-Rene was being "disobedient." Id. at ¶¶ 6–7. Mr. Jean-Rene objected to the search because a certain "standard [ ] has to be met . . . to authorize this search" and because a female officer was present. Id. at ¶¶ 7–8. The correctional officers laughed at Mr. Jean-Rene, "humiliated" him, and told him to "shut up" and "stop moving." Id. at ¶ 8. Mr. Jean-Rene began to cry because he could not stand. Id. Officers held Mr. Jean-Rene up while he was searched. Id. After finding no contraband on Mr. Jean-Rene, officers took him to a cell in the RHU. Id. at ¶¶ 8–9. Medical staff arrived at Mr. Jean-Rene's cell to ask if he was hurt. Id. ¶ 9. Mr. Jean-Rene told medical staff that they knew he was hurt because he was just at the medical unit and that the use of excessive force by the officers made his condition worse. Id. Mr. Jean-Rene demanded to see the warden. Id. ¶ 10. Medical staff told Mr. Jean-Rene that the warden "knows about this" but would not help Mr. Jean-Rene. Id.

## II.    STANDARD OF REVIEW

The Prison Litigation Reform Act requires federal courts to review complaints brought by prisoners seeking redress against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Under section 1915A(b), the court must review the prisoner complaint and identify cognizable claims or dismiss

the complaint, or any portion thereof, if the complaint is: (1) frivolous, malicious, or fails to state a claim upon which relief can be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).

## III.  DISCUSSION

### A.  Excessive Force Claim

A plaintiff's status as either a convicted or sentenced inmate or a pretrial detainee dictates whether his claim of excessive force is analyzed under the Eighth or Fourteenth Amendment.  See Darnell v. Pineiro, 849 F.3d 17, 29–35, 33 n.9 (2d Cir. 2017); Kingsley v. Hendrickson, 576 U.S. 389, 396–97 (2015) (examining a pretrial detainee's excessive force claim under the Fourteenth Amendment).   Mr. Jean-Rene was an unsentenced inmate on the date the alleged constitutional violations occurred.  See supra note 1.  "Unsentenced inmates are considered pretrial detainees."  Branch v.

4

Guadarrama, 2024 WL 1973494, at *2 n.1 (D. Conn. May 3, 2024) (citing Ibbison v.

Quiros, 2023 WL 1766440, at *10 (D. Conn. Feb. 3, 2023) (considering an unsentenced

inmate a pretrial detainee)).  Accordingly, Mr. Jean-Rene's excessive force claim is

analyzed under the Fourteenth Amendment, rather than the Eighth Amendment.  See

Darnell, 849 F.3d at 29.

The Due Process Clause of the Fourteenth Amendment "protects a pretrial

detainee from the use of excessive force that amounts to punishment."  Kingsley, 576

U.S. at 400-01 (quoting Graham v. Connor, 490 U.S. 386, 395, n.10 (1989)) (internal

quotation marks omitted).   Thus, to state a claim for the use of excessive force, Mr.

Jean-Rene must "show only that the force purposely or knowingly used against him was

objectively unreasonable."  Id. at 396–97.  Courts should nevertheless be mindful that

sometimes use of force is necessary "to preserve internal order and discipline and to

maintain institutional security."  Id. at 397 (quoting Bell v. Wolfish, 441 U.S. 520, 540

(1979)) (internal quotation marks omitted).  However, a plaintiff can still prevail in his

use-of-force claim where the force used is "excessive in relation to that purpose."  Id. at

398 (quoting Bell, 441 U.S. at 561) (internal quotation marks omitted).  Mr. Jean-Rene

can thus show, in the absence of an expressed intent to punish, either that the actions

taken against him "are not rationally related to a legitimate nonpunitive governmental

purpose," or that they "appear excessive in relation to" a nonpunitive purpose.  Id.

(quoting Bell, 441 U.S. at 561).

To determine whether the force used was objectively unreasonable requires

considering: "the relationship between the need for the use of force and the amount of

force used; the extent of the plaintiff's injury; any effort made by the officer to temper or

to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. at 397. A court must evaluate these factors "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. A court must "also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." Id. (internal quotation marks and alterations omitted).

The court liberally construes the Complaint as alleging that C.O. Young and C.O. Alicea used excessive force by "hurting" Mr. Jean-Rene while carrying him to the RHU by his shoulders during the "reverse escort." See Compl., at ¶ 5. Though there are few details as to how C.O. Young and C.O. Alicea carried Mr. Jean-Rene's person by his shoulders, the alleged reverse escort aggravated Mr. Jean-Rene's hernia condition, rendering him unable to walk or stand. Id. In light of the allegations concerning the escort, Mr. Jean-Rene has alleged enough facts to suggest a Fourteenth Amendment excessive force claim on Initial Review. See Ibbison v. Scagliarni, 2024 WL 4904636, at *2, *7 (D. Conn. Nov. 27, 2024) (allegations that correction officers ignored inmate's "extreme pain" from recent shoulder surgery and tight handcuffs while escorting him in the prison sufficient to state a Fourteenth Amendment excessive for claim on initial review).

Accordingly, Mr. Jean-Rene's Fourteenth Amendment excessive force claim may proceed against both C.O. Young and C.O. Alicea, who conducted the reverse escort of

Mr. Jean-Rene, as well as against Lt. Hartley, the lieutenant who ordered them to do so. See Shabazz v. Brunelle, 2025 WL 1726323, at *10 (D. Conn. June 20, 2025) ("Personal involvement may be shown by 'direct participation,' which requires in this context 'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'" (quoting Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016)); see also Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001) ("Direct participation" requirement "does not foreclose the liability of a person who, with knowledge of the illegality, participates in bringing about a violation of the victim's rights but does so in a manner that might be said to be 'indirect'—such as ordering or helping others to do the unlawful acts, rather than doing them him—or herself.").

### B. Deliberate Indifference to Serious Medical Needs Claim

Mr. Jean-Rene does not specifically allege a deliberate indifference to serious medical needs claim in his Complaint, see Compl. at Part E, but, in construing a pro se Complaint liberally "to raise the strongest arguments that they suggest," Sykes, 723 F.3d at 403, the court reads Mr. Jean-Rene's Complaint as alleging a Fourteenth Amendment deliberate indifference claim.[4]  See Darnell, 849 F.3d at 29.

Deliberate indifference to serious medical needs may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104–05 (1976) (footnotes omitted).

---

[4] As with Mr. Jean-Rene's excessive force claim, a deliberate indifference claim brought by a pretrial detainee is reviewed under the Fourteenth Amendment.  Darnell, 849 F.3d at 29.

"To state such a claim, a plaintiff must plead facts showing that [he] had a serious medical condition and that it was met with deliberate indifference." Bruno v. City of Schenectady, 727 F. App'x 717, 720 (2d Cir. 2018) (summary order) (citation and quotation marks omitted).  A "serious medical condition" is one that "is, in objective terms, sufficiently serious—that is, the prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain." Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotation marks omitted).

If a plaintiff establishes that he had a serious medical need, the plaintiff must next show a particular defendant was deliberately indifferent to that need.  See Charles v. Orange Cnty., 925 F.3d 73, 86 (2d Cir. 2019).  To do this, "a detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants knew that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health."  Id. at 87 (emphasis in original).

Mr. Jean-Rene's allegations are sufficient to demonstrate a deliberate indifference to serious medical needs claim under the Fourteenth Amendment. Generally, "courts recognize that 'not every hernia rises to the level of a serious medical need.'" Arpin v. Semple, 2025 WL 1358547, at *6 (D. Conn. May 9, 2025) (quoting Jenkins v. Trachtman, 2017 WL 7163935, at *3 (N.D.N.Y., 2017); McQueen v. Cty. of Albany, 2010 WL 338081, at *11 (N.D.N.Y., 2010) ("[A]t worst, plaintiff's hernia caused him to suffer intermittent pain and/or discomfort, which is patently insufficient to objectively prove that his condition was serious."); Day v. Lantz, 2009 WL 801612, at *3

8

(D. Conn. Mar. 25, 2009) (collecting cases)).  As such, a "bare allegation that [an inmate] has been denied a hernia operation" is insufficient to establish a serious medical need.  <u>Arpin</u>, 2025 WL 1358547, at *6.

However, Mr. Jean-Rene asserts more than a bare allegation that prison officials denied him a hernia operation.  Rather, Mr. Jean-Rene alleges that the hernia caused him such "severe pain in [his] stomach" that he was unable to climb to his top bunk. <u>See</u> Compl., ¶¶ 1- 4.  These additional facts are sufficient to demonstrate plausibly the objective component of a deliberate indifference claim for purposes of initial review, <u>i.e.</u>, that Mr. Jean-Rene had a serious medical need.  <u>See</u> <u>Solek v. Wallace</u>, 2021 WL 2186431, at *8 (D. Conn. May 28, 2021) (concluding plaintiff's allegation that his hernia "caused him to experience chronic pain" was sufficient to establish objective component on initial review and collecting cases concluding same).  Thus, the question is whether any defendant was deliberately indifferent to this serious medical need under the standard described in <u>Charles</u>, 925 F.3d at 87.

Mr. Jean-Rene alleges that Nurse Browne refused to "place[ ] [him] on the list"[5] for surgery and that she denied him a bottom bunk pass.  Compl., ¶¶ 1–2.  Mr. Jean-Rene also alleges that Captain Rivera told Mr. Jean-Rene that he "would look into" providing Mr. Jean-Rene with a bottom bunk pass and that Rivera "took [Mr. Jean-Rene's] name down."  <u>Id</u>. ¶ 3.

---

[5] It is not exactly clear from the allegations in the Complaint what list Nurse Browne refused to place Mr. Jean-Rene on.  However, the court interprets this list as related to hernia surgery when read in the context of Paragraph 1 of the Complaint as a whole: "On July 18, 2023[,] I woke up at 4:00AM to a severe pain in my stomach[.]  I was escorted to medical where the doctor confirmed I have a hernia in my stomach[,] it will get worse and I need surgery[,] I explained how I needed to be placed on the list which Browne stated no. . ."  Compl. at ¶ 1.

With respect to the allegations as to Captain Rivera's conduct, i.e., that Captain Rivera told Mr. Jean-Rene that he "would look into" providing Mr. Jean-Rene a bunk pass and took Mr. Jean-Rene's name down, those allegations, without more, are insufficient to suggest that Rivera "knew that failing to provide the [bottom bunk pass] would pose a substantial risk to [Mr. Jean-Rene's] health or that the[se] defendants should have known that failing to provide the [bottom bunk pass] would pose a substantial risk to [Mr. Jean-Rene's] health," Charles, 925 F.3d at 87 (emphasis original), in satisfaction of the subjective component. Captain Rivera told Mr. Jean-Rene that he "would look into it" and took his name down, which suggests that Captain Rivera was, at least ostensibly, attempting to help Jean Rene, not hinder him.

Mr. Jean-Rene's allegations against Nurse Browne, however, more clearly show plausible satisfaction of the subjective component. With respect to Nurse Browne's refusal to provide a bunk pass, Mr. Jean-Rene alleges that he told Nurse Browne that he would "not be able to climb on [his top] bunk," to which Nurse Browne replied that she "did not care." See Compl. at ¶ 2. While the court recognizes that there are facts not alleged, e.g., the availability of bunks and the manner in which they are assigned, there is no allegation that Nurse Browne's refusal turned on any such considerations. As such, the court determines that the facts presently alleged are sufficient to plead the subjective component of deliberate indifference.

Furthermore, Nurse Browne's alleged refusal to place Mr. Jean-Rene's name on the list for surgery also satisfies the subjective element. See, e.g., Gutierrez v. Ruiz, 2022 WL 17585968, at *5–6 (D. Conn. Dec. 12, 2022) (allegation that doctor did not

pursue surgery for plaintiff's hand because doctor did not want to fill out paperwork for it satisfied subjective component of Fourteenth Amendment deliberate indifference claim).

Accordingly, Mr. Jean-Rene's Fourteenth Amendment deliberate indifference claim may proceed against Nurse Browne.  However, it may not proceed against Captain Rivera at this time.  If later discovery supports allegations of such a claim, Mr. Jean-Rene may move to amend his Complaint.

### B.  Right to Bodily Privacy Claim

The court also construes Mr. Jean-Rene's Complaint as alleging a Fourth Amendment right to bodily privacy claim related to the "controlled cavity search" conducted in front of a female officer.  Compl. at ¶¶ 7, 8.  "[I]nmates retain a limited right to bodily privacy under the Fourth Amendment."  Harris v. Miller, 818 F.3d 49, 57 (2d Cir. 2016).  An inmate's right to bodily privacy "includes freedom from 'the involuntary viewing of private parts of the body' by guards of the opposite sex." Johnson v. Tremper, 38 F. App'x 665, 666–67 (2d Cir. 2002) (summary order) (quoting Forts v. Ward, 621 F.2d 1210, 1217 (2d Cir.1980); citing Covino v. Patrissi, 967 F.2d 73, 78 (2d Cir. 1992)).  "[I]f the inmate's Fourth Amendment claim challenges an isolated search," as Mr. Jean-Rene's claim seemingly does here, "courts typically apply the standard set forth in Bell v. Wolfish."  Harris, 818 F.3d at 58.  That standard requires the court to "consider [1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted." Id. (citing Bell, 441 U.S. at 559).

Applying these factors here, "[v]isual body cavity searches are invasive and degrading, occasioning a serious invasion of privacy and working a significant harm to a

person's bodily integrity." <u>Sloley v. VanBramer</u>, 945 F.3d 30, 38 (2d Cir. 2019).  The cavity search here was conducted when Mr. Jean-Rene was held up by other officers while they laughed at, humiliated, and told Mr. Jean-Rene to "shut up" and "stop moving." Compl., at ¶ 8.  It is unclear how an inmate's "disobedien[ce]," <u>id</u>. ¶ 7, would justify a cavity search such that it would be motivated by a valid penological or security purpose (as in the case of an officer suspecting an inmate of secreting contraband, for instance).[6]  In addition, this episode took place in the presence of a female officer, adding to the degrading effect.  <u>Id</u>. ¶ 8.  "The freedom from such degrading body inspections is . . . basic to the concept of privacy."  <u>Sloley</u>, 945 F.3d at 38 (internal quotation marks omitted).  Accordingly, having considered the <u>Bell</u> factors, the court determines that Mr. Jean-Rene's Fourth Amendment invasion of privacy claim may proceed against C.O. Stewart, the officer who conducted the cavity search, and Lt. Hartley, the lieutenant who ordered it. <u>See</u> <u>Shabazz</u>, 2025 WL 1726323, at *10; <u>Pataki</u>, 814 F.3d at 67.

### F. Requested Relief

Mr. Jean-Rene seeks damages and injunctive relief in the form of "standards to be [put] in place for similar cases."  Compl. at Part E.  Mr. Jean-Rene may not pursue injunctive relief because his transfer from Hartford to Corrigan[7] moots any claim for injunctive relief.  <u>Prins v. Coughlin</u>, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against

---

[6]Although Lt. Hartley ordered the original "shakedown" of the dormitory because he smelled marijuana, <u>see</u> Compl. at ¶¶ 3–4, the controlled cavity search itself was ordered only after Mr. Jean-Rene was subject to a reverse escort and accused of disobedience.  <u>Id</u>. at ¶¶ 3-7.  The facts, as alleged, do not suggest that Lt. Hartley suspected Mr. Jene-Rene for possession of marijuana contraband.

[7]<u>See</u> <u>Compl</u>. at Part B, listing Mr. Jean-Rene's Correctional Facility as Corrigan-Radgowski Correctional Center.

the transferring facility.")  However, Mr. Jean-Rene may seek damages from any defendants who had personal involvement in the alleged violations of law.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted)).  Having identified the defendants personally involved in each claim above, the court concludes that all named defendants had personal involvement in some alleged violation of law, except Captain Rivera, against whom Mr. Jean-Rene failed to state a claim, and Warden Long.

As to Captain Rivera, Mr. Jean-Rene failed to allege any claim against Captain Rivera.  See supra Part III.B.  With regard to Warden Long, the extent of his involvement here is limited to medical staff's statement that Warden Long "knows about this and won't help [Mr. Jean-Rene]." Compl. at ¶ 10.  Aside from the fact that the Complaint does not clearly specify what "this," entails in the allegation,   "[a] supervisor's mere knowledge of a constitutional violation is insufficient to establish personal involvement."  Jordan v. Gallagher, 2025 WL 950730, at *6 (D. Conn. Mar. 28, 2025) (citing Tangreti v. Bachmann, 983 F.3d 609, 616–17 (2d Cir. 2020)).  There are not any further allegations as to Warden Long.

Mr. Jean-Rene also names Nick Rodriguez as a defendant in the caption, Compl. at 1, but does not otherwise mention him by name in the body of the Complaint. However, Mr. Jean-Rene alleges he "appealed and explained to [the] District [A]dministrator everything," but the appeal was denied.  Id. at ¶ 10.  According to the

DOC's website, Nick Rodriguez is the District One Administrator.[8]   Thus, Mr.
Rodriguez's personal involvement was limited to denying the grievance appeal.
However, Mr. Rodriguez's denial of the grievance appeal is insufficient to establish his
personal involvement in any of the constitutional violations forming the basis for the
grievance. See Muniz v. Cook, 2021 WL 5919818, at *6 (D. Conn. Dec. 15, 2021)
(noting that "[s]ince Tangreti [v. Bachmann, 983 F.3d 609 (2d Cir. 2020)], district courts
have held that review of a grievance, administrative, or disciplinary appeal is insufficient
to establish the reviewer's personal involvement in claims relating to the underlying
proceeding." (collecting cases)).  Accordingly, Mr. Jean-Rene may not pursue damages
against Warden Long or Mr. Rodriguez.

## IV.    CONCLUSION

After conducting an Initial Review of the Complaint under section 1915A(a) of title
28 of the U.S. Code, Mr. Jean-Rene is permitted to pursue damages against defendants
Lieutenant Hartley ("Lt. Hartley"), Correctional Officer Young ("C.O. Young"), and
Correctional Officer Alicea ("C.O. Alicea") on his Fourteenth Amendment excessive
force claim; against defendant Registered Nurse Fern Browne ("Nurse Browne") on his
Fourteenth Amendment deliberate indifference to serious medical needs claim; and
against defendants Lt. Hartley and Correctional Officer Stewart ("C.O. Stewart") on his
Fourth Amendment bodily privacy claim.[9]

---

[8] The DOC website lists Nick Rodriguez as the District One Administrator.  See DOC, Operations North District Administrator, https://portal.ct.gov/doc/-/org/operations-north-district-administrator (last visited December 31, 2025).  The DOC website indicates that Hartford Correctional Center falls within the District 1 Administrator's jurisdiction.  See DOC, State Departments and Related Agencies Boards and Commissions, https://portal.ct.gov/sots/register-manual/section-iv/dept-of-correction---dept-of-emergency-svs-and-public-protection (last visited December 31, 2025).  The court takes judicial notice of the above, see supra note 1.

[9] The court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims because the

It is hereby ordered that:

**(1)**    The Fourteenth Amendment excessive force claim against defendants Lt. Hartley, C.O. Young, and C.O. Alicea will proceed for service.

**(2)**    The Fourteenth Amendment deliberate indifference to serious medical needs claim against defendant Nurse Browne will proceed for service.

**(3)**    The Fourth Amendment bodily privacy claim against defendants Lt. Hartley and C.O. Stewart will proceed for service.

**(4)**    Defendants Captain Rivera, Warden Long, and Mr. Rodriguez are terminated.

**(5)**    Within twenty-one (21) days of this Order, the Clerk shall verify the current work addresses of: defendants Young, Alicea, Browne, Hartley, and Stewart, and mail a copy of the Complaint, this Order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of each request.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

---

purpose of an Initial Review Order is to conduct a prompt initial screening to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants.  If there are no facially plausible federal law claims, then the court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a Motion to Dismiss or Motion for Summary Judgment.  More generally, the court's determination for purposes of an Initial Review Order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a Motion to Dismiss or Motion for Summary Judgment.

**(6)** Defendants shall file a response to the Complaint, either an answer or motion to dismiss, within thirty (30) days from the date the Notice of Lawsuit and Waivers of Service of Summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

**(7)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this Order. Further extensions are extremely unlikely. Discovery requests need not be filed with the court.

**(8)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

**(9)** If Mr. Jean-Rene changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that Mr. Jean-Rene MUST notify the court. Failure to do so can result in the dismissal of the case. Mr. Jean-Rene must give notice of a new address even if he is incarcerated. Mr. Jean-Rene should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Jean-Rene has more than one pending case, he should indicate all case numbers in the notification of change of address. Mr. Jean-Rene should also notify the defendants or the attorney for the defendants of his new address.

**(10)** Mr. Jean-Rene shall utilize the Prisoner Efiling Program when filing documents with the court. Mr. Jean-Rene is advised that the Program may be used only to file documents with the court. Local Court Rule 5(f) provides that discovery requests

are not to be filed with the court. Therefore, discovery requests must be served on the defendant's attorney by regular mail.

(11)    The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties.

(12)    The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the DOC Legal Affairs Unit.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 28th of January 2026.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge